## NICHOLAS HENKES *vs.* CITY OF MINNEAPOLIS.

### February 14, 1890.

**Municipal Corporation—Liability for Icy Sidewalks.**—The duty of a city to exercise reasonable care to keep its sidewalks in a safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness, there being no such accumulation of ice as to constitute an obstruction to travel, and no ridges or inequalities of such height, or lying at such inclination or angle, as would be likely to trip passengers or cause them to fall.

**Same—Ice Artificially Caused.**—The duty of the city in this regard is not affected by the fact that the ice is in part the result of artificial causes, as of water escaping from hose, and not wholly of natural causes, such as the fall of rain.

Action brought in the district court for Hennepin county, to recover $5,000 for personal injuries resulting from a fall on an icy sidewalk. Trial before *Hooker, J.*, who ordered a dismissal at the close of the evidence for plaintiff, who appeals from an order refusing a new trial.

*Penney & Rogers*, for appellant.

*Robert D. Russell*, for respondent.

MITCHELL, J. The trial court was clearly right in dismissing the case on the ground that plaintiff had failed to establish a cause of action. The sum of all the evidence is that it was and for some time had been cold winter weather, and all the sidewalks in the city were covered with ice to a certain extent, so that "if a man didn't take care, he was liable to slip and fall almost any place." About a week previous to the accident there had been a fire in the building abutting on the sidewalk where plaintiff sustained the injury, during which some water escaped from the hose, and ran upon the sidewalk, which was then covered with a coating of snow, which soon after froze, and remained in that condition, without any thaw, until the time of the accident. The result was that the ice was a little thicker on this part of the sidewalk than elsewhere, and also a little rougher because of the footprints of people who stepped in the wet snow at the time of the fire.

But this extra thickness of ice was very small, and the roughness comparatively slight. As one witness put it, "there was no particular bad deep places, or big high ridges to amount to anything; there was no place you could stub your toe." Another witness said the best explanation he could give of the roughness spoken of was "if there was a coating of snow on this floor, and you were to step on it, it would make a dent in it; it was something like that. Of course, stepping into it, all water, and letting it freeze, it wouldn't remain as thick a dent as that." The witnesses describe the thickness of the ice as from two to two and a half inches. It is evident that neither the thickness of the ice nor the roughness spoken of was such as to form an obstruction to travel, or to render this part of the walk appreciably less safe than any other sidewalk. Neither was it any more slippery. Hence we can see no reason why it was any more the duty to remove this ice than it was to remove it from any other sidewalk. Appellant seems to argue that the fact that this ice was in part the result of an artificial cause, and not wholly of natural causes, such as the fall of rain or snow, makes a difference. But no such a distinction can be maintained. The liability of the city must rest upon some ground of fault or neglect on part of its officers who have charge of the streets, and such fault or neglect is no more involved in removing ice formed by water from hose than ice formed by rain from the clouds. *Nason* v. *City of Boston,* 14 Allen, 508. The only evidence as to how the accident occurred is that of the plaintiff himself, who says that, as he was travelling this sidewalk, "he slipped with his right foot and fell over, and fell on his leg and broke it." He does not claim that his foot struck an obstruction, or that any obstruction existed; simply that he slipped and fell, as he might have done on any sidewalk that was icy.

Upon such a state of facts, there can be no recovery against the city, unless it is the duty of such municipalities to keep their sidewalks clear of ice. In this climate such a thing would be a physical impossibility, and an attempt to do it would involve an amount of expense that would bankrupt any city. No court has ever held that reasonable care required an attempt to do any such thing. An unbroken line of authorities holds that mere slipperiness of a sidewalk

by either ice or snow is not a defect for which cities are liable; that their obligation to keep their streets in a safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness.    Among the great number of cases to this effect are *Stanton* v. *City of Springfield,* 12 Allen, 566; *Nason* v. *City of Boston, supra; Stone* v. *Inhabitants of Hubbardston,* 100 Mass. 49; *Smyth* v. *Bangor,* 72 Me. 249; *McKellar* v. *City of Detroit,* 57 Mich. 158, (23 N. W. Rep. 621;) *Taylor* v. *City of Yonkers,* 105 N. Y. 202, (11 N. E. Rep. 642;) *City of Chicago* v. *McGiven,* 78 Ill. 347; *Broburg* v. *City of Des Moines,* 63 Iowa, 523, (19 N. W. Rep. 340;) *Cook* v. *City of Milwaukee,* 24 Wis. 270, 27 Wis. 191; *Bleakley* v. *Corporation of Prescott,* 12 Ont. App. 637.    In the present case, as already remarked, there was nothing but the slipperiness which caused the accident.    There was no such accumulation of ice as to constitute an obstruction to travel; neither were there any ridges or irregularities of such height, or lying at such inclination or angle, as would be likely to trip passengers or cause them to fall.

Order affirmed.